LIZZIE W. JOHNSTON, Appellant, v. R. A. JOHNSTON, Appellee.

**CONTRACTS:** Construction—Reasonableness—Antenuptial Agree-
1 ments. A construction which will work unfair or unreasonable results will not be placed upon a contract unless the terms thereof force the court so to do. So held as to an antenuptial contract.

**CONTRACTS:** Conditions Subsequent—Antenuptial Contracts—Im-
2 provements. An antenuptial contract, under which one party

waived all dower interest in the farm of the other, but was to have a share of the increased value thereof and improvements placed thereon, reviewed; and *held* that the non-making of improvements was, in effect, the breach of a condition subsequent, and did not cancel the contract.

HUSBAND AND WIFE: Marriage Settlements—Subsequent Misconduct of Party—Effect. The subsequent misconduct of a party to an antenuptial contract, of such grave nature as to result in a divorce to the other party, does not cancel such contract as to provisions which, in their very nature, are already executed.

*Appeal from Wapello District Court.*—FRANK R. EICHEL-BERGER, Judge. ·

JANUARY 12, 1918.

THE plaintiff and appellant instituted suit for divorce against the appellee, and obtained decree. From this there is no appeal. Into the divorce suit was injected the construction and application of an antenuptial contract. The trial court established a lien in favor of the appellee upon land owned by the appellant, for the sum of $1,750, payable at the death of the plaintiff, without interest. This is the order appealed from.—*Affirmed.*

*Lowenberg & Maddy,* for appellant.

*F. G. Orelup* and *E. R. Mitchell,* for appellee.

SALINGER, J.—I. Shortly before the parties were married, they made a writing stipulating that, "for valuable considerations hereby acknowledged and receipted for, and in anticipation of entering into the marriage relation with each other," it was agreed as follows:

1. CONTRACTS: construction: reasonableness: antenuptial agreements.

(a) The intending husband, "in consideration of the covenants herein contained, and for other valuable consideration," agrees and does forever relinquish and disclaim any interest which he might obtain through or by his said

marriage in a certain farm described, and in certain personal property described.

(b)   The intending husband is to have possession of said farm, and improve the farm land of the intending wife in a good and workmanlike manner.

(c)   He is "to be entitled and have as his share of the improvements made by him on said farm from its present condition and value, and for the purpose of this contract the parties hereto consent that a fair valuation of said farm land at the present time would be $25 per acre."

(d)   The indebtedness of the former husband of plaintiff, amounting to approximately $350, is to be paid and liquidated by these parties from the proceeds of said farm and certain described stock and increase thereof.

The essential position of the appellant is this:

a.   A fair construction of the contract works that defendant is to receive nothing except "his share of the improvements made by him on said farm."

b.   Its language makes evident the parties contemplated that defendant should be compensated only for improvements made by him. It is a fair construction of the contract that he should receive no more than a share of the value added to the farm "by reasons of improvements made by him."

c.   It was not contemplated by either of the parties that defendant should have a share in the natural increase in the value of the farm coming from a general increase of values not due to any effort on the part of either of the parties.

d.   The evidence conclusively shows defendant did not improve the farm, and there is no competent testimony that its value was increased by reason of any improvements defendant made thereon. Defendant tacitly admits that, aside from general increase in value, the farm is worth no more now than it was on the day contract was made.

Therefore, the court was not justified in giving defendant a judgment for anything.

e. The evidence upon which plaintiff obtained decree of divorce shows that defendant, by his conduct, made it impossible for the plaintiff to continue the marriage relation with him. Thereby, he has put his case within the rule which prevents one from taking a benefit under a contract if, by his own conduct, he has made it impossible for the other to carry the contract to final completion under the terms thereof. "That the appellee, of his own volition, and by his own wrongdoings, made it impossible for the relation to be continued by the parties. Thus it was not within the power of appellant to carry out the contract that was entered into by the parties before their marriage."

The citations for appellant further clear up her position. The proposition is made that, where one party to a contract declares that he will not perform his part, or so acts as to make it impossible for him to do so, he thereby releases the other from the contract and its obligations (9 Cyc. 641) ; that discharge by renunciation and by acts rendering performance impossible may take place while the contract is still wholly executory (9 Cyc. 635). If the promisor be prevented from performing his contract by the act of the promisee, he will be discharged from liability for nonperformance. Many authorities are cited for the proposition that, where one of the parties to a contract, either before time for performance or in the course of performance, makes performance or further performance by him impossible, the other party is discharged.

II. While there is conflict on whether it was done well, defendant did operate the farm; and, while it is not quite clear just how much debts he paid out of the proceeds, he did pay some. It cannot be said he met the highest standards in keeping up the farm, and the im-

2. Contracts : conditions subsequent : antenuptial contracts : improvements.

provements placed by him thereon are of little importance.
But it does appear that, when the parties left the farm,
it was worth more than it was at the time the contract was
made. To determine whether the trial court made the
correct award and adjustment, we must pass upon what the
reasonable interpretation of that contract is. It was, no
doubt, intended that the defendant should place improve-
ments on the farm. But that does not quite establish that
he was to have nothing on the death of his wife except a
part of what these improvements were worth. Unless that
be imperative, we should not hold that the contracting par-
ties intended what was either unfair or unreasonable.
Would not the construction for which appellant contends
be that? According to it, a man was to operate the farm
of another, pay debts of another out of the proceeds, dis-
charge operating expense, put on improvements, relinquish
all rights in the farm that the marriage would give him, and
receive nothing in consideration of all this except a part of
his own money, expended for these improvements. We think
that a failure to meet the requirement to put on improve-
ments accomplishes no more than that such failure should
be taken into consideration in fixing the amount that de-
fendant should be allowed; that the breach of this covenant
is, in a sense, one of a condition subsequent, and will not
work to cancel the contract. It seems to us this inter-
pretation is reasonable, and effectuates equity and justice.
And, after taking into consideration such departure from
the contract to make improvements as the evidence dis-
closes, we are not inclined to interfere with the award be-
low for being excessive.

3. HUSBAND AND WIFE: marriage settlements: subsequent misconduct of party: effect.

As to the theory that, as the conduct of
the defendant justified the decree of divorce
which plaintiff obtained, the wife need not
comply with the contract, because the hus-
band has breached it, and by his conduct

has made performance impossible, we have to say that so claiming involves misunderstanding of the contract. It may be conceded that, on agreement to marry on consideration that the parties to the marriage will make certain property adjustments, whatever remains executory might not need to be performed by the innocent party, if the other justify a divorce. But here is no such agreement. It was, to be sure, made in anticipation of marriage,—perhaps it may be said because of the intended marriage. But none the less it was a contract adjustment, for which release of the dower right and obligation to do work and expend money was the consideration on one hand, and a covenant to allow a share in the increase of value in the property dealt with on the other. Such a contract could be made by two who never were married, and never intended to be. As to the contract that was made, the fact that marriage was intended when the contract was made is largely adventitious. That, after the marriage was entered into, the defendant did not observe what the marriage ceremony implies, is no reason why he may not obtain what is due him under contract to be paid for services on a farm, and money expenditures thereupon.

Then, too, no act of the defendant made the completion of the contract to operate the farm until plaintiff died, impossible. It was made impossible, if at all, because both parties declared it completed, by leaving the farm and moving to town, and there establishing a permanent residence.

We agree with the conclusions reached by the trial court, and its decree is, therefore,—Affirmed.

PRESTON, C. J., LADD and EVANS, JJ., concur.